IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 27, 2011

**THOMAS NATHANIEL ALLEN v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Hamblen County**
**No. 08CR536   John F. Dugger, Jr., Judge**

_____

**No. E2010-01971-CCA-R3-PC - Filed March 13, 2012**

_____

After trial, a jury convicted the Petitioner, Thomas Nathaniel Allen, of first degree murder, and he received a life sentence in the Tennessee Department of Correction. The Petitioner appeals the Hamblen County Criminal Court's denial of his petition for post-conviction relief and writ of error coram nobis. He argues that he is entitled to post-conviction relief based on the ineffective assistance of his trial counsel and prosecutorial misconduct committed by the State.[1] The Petitioner claims that he received ineffective assistance of counsel because trial counsel failed to (1) investigate or call several witnesses at trial and (2) retain a jury consultant. He asserts that the State committed prosecutorial misconduct by instructing a witness not to talk to the defense. The Petitioner additionally argues that the post-conviction court erred in denying him coram nobis relief based on newly discovered evidence. Upon review, we affirm the judgments of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, J., joined. J.C. MCLIN, J., (mortuus).

Roger G. Day, Johnson City, Tennessee for the Petitioner, Thomas Nathaniel Allen.

Robert E. Cooper, Jr., Attorney General and Reporter; Lindsy Paduch Stempel, Assistant Attorney General; C. Berkeley Bell, Jr., District Attorney General; and Victor Vaughn, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

_____

[1]The Petitioner argued a number of additional claims before the post-conviction court. However, his brief on appeal addresses only those claims discussed here. As a result, all the other claims he raised before the post-conviction court are waived.

**Background.**  This Court summarized the facts of this case on direct appeal:

> This case arises from the murder of Donald Wilder, Jr., which occurred in June of 2003.  The State alleged that Defendant Smith shot and killed Wilder with the assistance of his girlfriend, Defendant Jarnigan.  The State further alleged that Defendant Allen requested that the murder be committed, provided drugs to assist in the killing, and provided money and drugs in exchange for the killing.  The Defendants were all charged with first degree premeditated murder, with Defendants Jarnigan and Allen being charged under the theory of criminal responsibility.

State v. George Arthur Lee Smith, No. E2006-00984-CCA-R3-CD, 2007 WL 4117603, at *1 (Tenn. Crim. App., at Knoxville, Nov. 19, 2007), perm. app. denied (Tenn. Feb. 25, 2008).

Following trial, the jury convicted the Petitioner of first degree murder.  He and his co-defendants appealed, challenging (1) the sufficiency of the evidence, (2) issues related to venue, (3) the consolidation of the three co-defendants' cases for trial, (4) the State's peremptory strikes of potential jurors, (5) the impartiality of a juror, and (6) the admission of an audio recording and the Petitioner's prior criminal charge into evidence. Id. at *1. This Court affirmed the judgments of the trial court.  Id.  The Petitioner filed a timely pro se petition for post-conviction relief and for writ of error coram nobis.  The trial court appointed counsel, and an amended petition was filed.  An evidentiary hearing followed.

At the hearing, Michael Brassfield testified that he signed an affidavit that the Petitioner submitted with the post-conviction petition.  The affidavit stated that Brassfield's trial testimony against the Petitioner was false.  However, Brassfield testified at the hearing that his trial testimony was true.  He explained that he signed the affidavit at his mother's insistence:

> My mom was coming up there every day bugging me, and every time I turn around she's calling me on the phone and stuff like that[.]  I went and signed just to get her off my back, you know.

Brassfield's mother gave him $100 in exchange for signing the affidavit.  Brassfield further said that he did not read the contents of the affidavit and that he was drunk at the time he signed it.

Phyllis Allen, the mother of the Petitioner and Brassfield, testified that she was not called as a witness at the Petitioner's trial and did not know why.  Had she been called, she

would have testified that Brassfield came to her house one day seeking money. He told her that he had committed some robberies and needed the money to flee. Brassfield threatened her, and attempted to run her over with a truck. When Brassfield was unsuccessful in getting any money from her and the rest of the family, he "said that he was going to get revenge against my son, Thomas Allen, and myself and my – daughter, Nikki Allen – Janan Allen and the whole family."

On cross-examination, Phyllis Allen acknowledged meeting with the investigator assisting the Petitioner's trial counsel. She told the investigator that she was concerned about testifying because she was hesitant to choose between supporting one son over the other.

Janan Allen, the Petitioner's sister, testified that she discussed testifying with the Petitioner's trial counsel. She did not testify at trial because she was arrested before she was able to do so and was in jail when the defense offered proof at trial. Had she testified at trial, she would have said that Brassfield had a reputation for being untrustworthy. She testified, "[H]e's on drugs a lot. And when he is, he's not too trustworthy. He lies. He's manipulative."

Trial counsel testified that he decided not to call Phyllis Allen to testify because he was concerned that she might lose her composure on the witness stand and testify contrary to the Petitioner's case. Trial counsel said that he met with her personally and that his investigator had also met with her on multiple occasions. He recalled that "she was very torn" about testifying for one son and against the other. He said that she was "very nervous, very upset about this." Additionally, trial counsel knew that one of the Petitioner's family members, Brassfield, was already going to be testifying against him and was fearful that the Petitioner's mother might "fall apart" and testify against him as well.

Regarding his failure to call Janan Allen to testify, trial counsel testified that he initially had planned to call her. However, she was arrested immediately before trial began. Trial counsel believed that "her arrest certainly put a big cloud over the ability to call her in and use her as a witness." He was unsure of the effect the arrest would have on her value as a witness, and he testified that "she became a risk." Furthermore, trial counsel expressed a reluctance to have her testify because he was afraid she also might lose her composure while on the stand and testify against the Petitioner. He was concerned about "how [it] would play" in front of the jury to have several family members testifying against one son or the other. Trial counsel testified that Janan Allen's testimony was cumulative of another witness who was not a member of the family and who was able to testify to attack Brassfield's character.

Trial counsel testified that he and his investigator attempted to locate Jessica Dudley but were unsuccessful. The investigator had a subpoena for her and "carried it around for several weeks," but he could not find Dudley. As a result, neither trial counsel nor his investigator ever spoke with Dudley.

Trial counsel testified that he could not recall whether he and his investigator spoke with Richard Atkins, who was present for conversations at a store and a motel in which the Petitioner discussed his crime. Trial counsel was sure that the investigator "was searching and seeking out every person that he could locate[,] that he had any lead for." Trial counsel did not remember if the investigator ever found Atkins. He testified, however, that if Atkins "was in on that conversation at the store, then we had someone to counteract the store." He explained that Bronson Hollifield testified that he was present at the store and the Petitioner did not solicit the victim's murder there.

Trial counsel did not remember whether he and his investigator talked to Tennessee Highway Patrol Trooper Terry Wolfe. He recalled that one witness for the State, Robert Rucker, was an informant and Wolfe was his "handler." Trial counsel said, "I would have been shocked if Mr. Wolfe . . . would have talked to us about anything. I've never seen too many handlers talk to you about the confidential informants." He explained that any information Trooper Wolfe could have provided would have been relevant only to the impeachment of Rucker's statement that he told Wolfe that the Petitioner wanted the victim killed. Trial counsel repeated his doubt that Wolfe would have spoken with him, and added, "I'm at a loss to know what I would have done with the information if I had it."

Trial counsel testified that the trial court granted a motion for the defense to retain a jury consultant. However, trial counsel ultimately decided not to retain one. He explained that a jury consultant is helpful "in a place where you don't have any connections and knowledge of the jury pool." He said such was not the case for the Petitioner, who "knew of the folk here in Hamblen County." Additionally, trial counsel said that the trial court administered a jury questionnaire and allowed trial counsel time to review it extensively with the Petitioner. Trial counsel, consulting with his investigator and the Petitioner, was able to accomplish what a jury consultant would have, and trial counsel testified that he did not "know how it would have changed the outcome in this case" to have retained a consultant.

Regarding the Petitioner's allegation that the State committed prosecutorial misconduct in instructing Connie Lawson, a State witness, not to speak to the defense, trial counsel remembered that he tried to talk to her and she refused.

On cross-examination, trial counsel testified that he and his investigator interviewed or attempted to interview every "nongovernmental" witness. They thoroughly investigated

the case, and trial counsel did not "know what else we could have done." Additionally, trial counsel testified that the cross-examination of Brassfield was difficult, and he impeached Brassfield's testimony as well as he could. He acknowledged that the cross-examination of Brassfield discussed Brassfield's prior convictions and the plea bargain which Brassfield gained in exchange for testifying for the State. Additionally, Brassfield was cross-examined concerning a dispute with the Petitioner, further demonstrating Brassfield's motive to testify against the Petitioner.

Following the hearing, the post-conviction court issued an order denying all of the Petitioner's grounds for relief. The court concluded that the Petitioner failed to meet his burden of proof, and the court denied the petition. The Petitioner now appeals the court's denial of post-conviction and coram nobis relief.

## ANALYSIS

**I. Post-Conviction Relief**. Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgment of a constitutional right. T.C.A. § 40-30-106 (2006). The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f)(2006); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

The Petitioner argues that he is entitled to post-conviction relief because he received ineffective assistance of counsel and because the assistant district attorney committed prosecutorial misconduct. We will consider each issue in turn.

A.  Ineffective Assistance of Counsel.  The Petitioner alleges that trial counsel was ineffective for failing to investigate or call as trial witnesses (1) Phyllis Allen, (2) Janan Allen, (3) Tennessee Highway Patrol Trooper Terry Wolfe, (4) Richard Atkins, and (5) Jessica Dudley.  Additionally, he argues that trial counsel was ineffective in failing to retain a jury consultant.  The State responds that the record supports the post-conviction court's findings that these decisions were strategic and that the Petitioner did not prove either deficient performance or prejudice by clear and convincing evidence.  Specifically concerning Trooper Wolfe, Richard Atkins, and Jessica Dudley, the State argues that the Petitioner has failed to carry his burden because he did not present them as witnesses at the hearing.  We agree with the State.

The Tennessee Supreme Court has explained the well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution.  Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense.  Id. (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)).  "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim.  Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component."  Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697, 104 S. Ct. at 2069).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms."  Id. at 369 (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter, 523 S.W.2d at 936).  Prejudice arising therefrom is demonstrated once the petitioner establishes "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 370.

"'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. (quoting Strickland, 466 U.S. at 694, 104 S. Ct. at 2068).

We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689, 104 S. Ct. at 2065). A court will defer to counsel's tactical or strategic choices as long as they are informed by adequate preparation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89, 104 S. Ct. at 2065.

This court has concluded that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). The presentation of the witness at the post-conviction hearing is the only way for the petitioner to establish:

> (a) a material witness existed and the witness could have been discovered but for counsel's neglect in his investigation of the case,
>
> (b) a known witness was not interviewed,
>
> (c) the failure to discover or interview a witness inured to his prejudice, or
>
> (d) the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner.

Id. This court further stated, "[T]he petitioner is not entitled to relief from his conviction on this ground unless he can produce a material witness who (a) could have been found by a reasonable investigation and (b) would have testified favorably in support of his defense if called." Id. at 758.

Regarding trial counsel's failure to investigate or call witnesses at trial, the Petitioner argues that the testimony of Phyllis Allen, Janan Allen, and Richard Atkins would have impeached or contradicted the testimony of Brassfield. According to the Petitioner, Phyllis and Janan Allen would have testified to Brassfield's untrustworthy character and his motives to testify against the Petitioner. Atkins would have testified that a conversation Brassfield

described, in which the Petitioner discussed the victim's murder, never occurred. Atkins also would have testified that Brassfield "swore to get revenge on [the Petitioner]" and that the Petitioner was not involved in the victim's murder. The Petitioner further asserts that the testimony of Trooper Wolfe was important to either corroborate or disprove the testimony of State witness Robert Rucker, who testified that he informed Wolfe of the murder plot. Finally, the Petitioner asserts that Jessica Dudley could have testified to the existence, or lack thereof, of a conversation that Rucker testified occurred at Dudley's residence and involved the Petitioner. These failures, according to the Petitioner, were deficient performance that resulted in prejudice to the defense.

Regarding trial counsel's failure to retain a jury consultant, the Petitioner simply states that such a failure constitutes deficient performance. He does not provide further argument as to why that may be so or how the failure resulted in prejudice to his case.

In denying relief based on these claims of ineffective assistance of counsel, the post-conviction court found that trial counsel is "an experienced criminal defense attorney, who is death penalty qualified." The court stated that trial counsel's "credibility is impeccable as compared to Petitioner." The court reviewed the amount of time trial counsel spent on the case, 134.6 hours out of court and 29.5 hours in court, and found that trial counsel "counseled with Petitioner, investigated the case with the help of an investigator, filed the appropriate motions and made reasonable tactical decisions throughout petitioner's trial." As a result, the court ruled that the Petitioner did not prove by clear and convincing evidence that trial counsel rendered ineffective assistance.

The record does not preponderate against the findings of the post-conviction court. With regard to Phyllis and Janan Allen, the proof at the post-conviction hearing established that trial counsel made strategic decisions, informed by adequate preparation, in deciding not to call these witnesses. Trial counsel decided, based on personal meetings with Phyllis Allen, that she was not sufficiently stable to be a reliable witness for the Petitioner. He feared that she might lose her composure and give damaging testimony. Similarly, once Janan Allen was arrested, trial counsel decided that the recent arrest made her testimony too risky, especially in light of the fact that her testimony would have been duplicative of another defense witness's testimony. Such decisions were within the range of reasonable assistance, and the Petitioner has failed to carry his burden to prove the ineffective assistance of counsel.

Concerning Trooper Wolfe, the Petitioner did not present Wolfe's testimony at the hearing. As a result, Black dictates that the Petitioner is not entitled to relief because he cannot demonstrate that Wolfe's testimony would have been favorable to the Petitioner's case. 794 S.W.2d at 757-58. The Petitioner, therefore, has not carried his burden to prove that the failure to call Wolfe constituted ineffective assistance.

Whether <u>Black</u> controls the Petitioner's arguments regarding Atkins and Dudley, as the State asserts, is less certain. <u>Black</u> states that the presentation of the witness is generally the "only" way the petitioner can show ineffective assistance of counsel based on a failure to investigate or call a witness. 794 S.W.2d at 757. However, this court has sometimes treated affidavits from potential witnesses as sufficient. <u>See, e.g.</u>, <u>D'Angelo Marquez Jenkins v. State</u>, No. M2010-01083-CCA-R3-PC, 2011 WL 3841970, at *6, 9 (Tenn. Crim. App., at Nashville, Aug. 30, 2011); <u>Michael F. Garlock v. State</u>, No. 01C01-9212-CR-00385, 1993 WL 331820, at *2 (Tenn. Crim. App., at Nashville, Aug. 26, 1993). Although the Petitioner did not present Atkins or Dudley at the hearing, he attached their affidavits to his petition. In the affidavits, each described the substance of what their testimony would have been and stated that they were willing to testify on the Petitioner's behalf at trial.

The Petitioner asserts that Atkins was present at a time Brassfield testified the Petitioner discussed the murder, and Atkins would testify that the Petitioner did not discuss a murder. Atkins would also testify that Brassfield had reason to testify against the Petitioner. Although Atkins's testimony would have been relevant to impeach Brassfield's trial testimony, the proof at the hearing showed another defense witness, Bronson Hollifield, contradicted Brassfield's testimony that a similar conversation occurred at another location. Additionally, at least one other witness testified to Brassfield's reputation for lying, and Brassfield was impeached with his prior convictions and his motives to testify against the Petitioner. Finally, the record shows trial counsel did much to discredit Brassfield's testimony, and Atkins's testimony would have added little to the Petitioner's defense. The Petitioner, therefore, cannot establish prejudice necessary to prove that trial counsel's failure to call Atkins was ineffective assistance.

Second, regarding the failure to investigate and call Dudley to testify, the Petitioner cannot prove that she "could have been found by a reasonable investigation." <u>Black</u>, 794 S.W.2d at 758. Trial counsel testified that his investigator attempted to find every witness that could have been helpful to the Petitioner's defense. He said that the investigator had a subpoena for Dudley and searched for her, but was unable to find her. It appears from the record that trial counsel and his investigator undertook a reasonable investigation. The failure to investigate her and call her at trial does not constitute ineffective assistance, and the Petitioner has failed to carry his burden of proof on this matter.

Turning to the Petitioner's claim that trial counsel failed to hire a jury consultant, the Petitioner has presented no evidence as to how this decision prejudiced his defense. Trial counsel testified that he decided not to hire such a consultant after the trial court allowed a jury questionnaire and sufficient time to review the questionnaire with the Petitioner. Counsel stated that this allowed him and the Petitioner to perform the same function that a jury consultant would have performed. The Petitioner has not proven either deficient

representation or prejudice as a result of trial counsel's decision, and he is not entitled to relief.

B. Prosecutorial Misconduct. The Petitioner asserts that the State committed prosecutorial misconduct by instructing witness Connie Lawson not to speak to the defense before trial, and that such misconduct warrants post-conviction relief. The State responds that the Petitioner has waived this argument for failure to raise it on direct appeal. We agree with the State that this claim is waived.

The Post-Conviction Procedure Act provides that a ground for post-conviction relief is waived if the petitioner previously failed to raise it "in any proceeding before a court of competent jurisdiction in which the ground could have been presented." T.C.A. § 40-30-106(g) (2006).[2] Here, the Petitioner could have raised this claim of prosecutorial misconduct on direct appeal. He failed to do so, see George Arthur Lee Smith, 2007 WL 4117603, at *1, and his claim is waived as a result. See, e.g., Shannon Lee Jarnigan v. State, No. E2010-02154-CCA-MR3-PC, 2011 WL 3715809, at *9 (Tenn. Crim. App., at Knoxville, Aug. 24, 2011) (holding that the Petitioner's co-defendant, whose direct appeal was consolidated with the Petitioner's, waived the same claim of prosecutorial misconduct for failure to raise it on direct appeal).

Additionally, the Petitioner also waived this issue for failure to support it with sufficient argument and citation to authorities. See Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."); see also State v. Hammons, 737 S.W.2d 549, 552 (Tenn. Crim. App. 1987) (finding argument waived when the appellant failed to cite authority in support of his "abbreviated argument"). The Petitioner's brief, in three sentences, merely states that the prosecution instructed Lawson not to talk to the defense, that such an act should not be done, and that this merits post-conviction relief. Because the Petitioner failed to provide sufficient argument or supporting authority, this issue is waived.

**II**. **Coram Nobis Relief.** The Petitioner argues that Brassfield's trial testimony was untrue as stated in his affidavit constitutes new evidence which entitles him to coram nobis relief. The State responds that the post-conviction court did not abuse its discretion in denying coram nobis relief because the Petitioner presented no new evidence and because the Petitioner cannot show how any alleged new evidence would have resulted in a different outcome at trial. We agree with the State.

---

[2]The statute provides for two exceptions to this general rule, neither of which is applicable to the Petitioner's case.

A writ of error coram nobis is available to convicted defendants. T.C.A. § 40-26-105(a) (2006). However, a writ of error coram nobis is an "extraordinary procedural remedy" that "fills only a slight gap into which few cases fall." State v. Mixon, 983 S.W.2d 661, 672 (Tenn. 1999) (citing Penn v. State, 670 S.W.2d 426, 428 (Ark. 1984)); State v. Workman, 111 S.W.3d 10, 18 (Tenn. Crim. App. 2002). "The purpose of this remedy 'is to bring to the attention of the [trial] court some fact unknown to the court, which if known would have resulted in a different judgment.'" State v. Hart, 911 S.W.2d 371, 374 (Tenn. Crim. App. 1995) (quoting State ex rel. Carlson v. State, 407 S.W.2d 165, 167 (Tenn. 1966)).

Relief by petition for writ of error coram nobis is provided for in Tennessee Code Annotated section 40-26-105. The statute provides, in pertinent part:

> The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial. The issue shall be tried by the court without the intervention of a jury, and if the decision be in favor of the petitioner, the judgment complained of shall be set aside and the defendant shall be granted a new trial in that cause.

T.C.A. § 40-26-105(b), (c) (2006). When the Petitioner asserts recanted testimony as newly discovered evidence for the purpose of coram nobis relief, the trial court should grant relief only if:

(1) the trial court is reasonably well satisfied that the testimony given by the material witness was false and the new testimony is true;

(2) the defendant was reasonably diligent in discovering the new evidence, or was surprised by the false testimony, or was unable to know of the falsity of the testimony until after trial; and

(3) the jury might have reached a different conclusion had the truth been told.

Mixon, 983 S.W.2d at 673 n.17.  Finally, "[t]he decision to grant or deny a petition for the writ of error coram nobis on the ground of subsequently or newly discovered evidence rests within the sound discretion of the trial court."  Hart, 911 S.W.2d at 375.

The post-conviction court denied the petition for coram nobis relief based on Brassfield's affidavit.  Under the Mixon standard for deciding whether recanted trial testimony merits a new trial, the post-conviction court was "not reasonably well satisfied of the veracity of the recantation" because Brassfield testified at the post-conviction hearing that his trial testimony was true, that he was paid to sign the affidavit recanting his trial testimony, and that he was intoxicated at the time he signed the affidavit.  Consequently, the post-conviction court concluded that the Petitioner "has failed to carry his burden [to prove] that the newly discovered evidence may have resulted in a different judgment."

The record in this case shows that the post-conviction court did not abuse its discretion in denying the petition.  Although Brassfield signed an affidavit recanting his trial testimony, he disavowed the affidavit at the post-conviction hearing.  He testified that his trial testimony was truthful.  As a result, the trial court did not abuse its discretion in finding that the veracity of the recantation was not established.  The Petitioner is not entitled to coram nobis relief.

**CONCLUSION**

Upon review, we affirm the judgments of the post-conviction court.

_____
CAMILLE R. McMULLEN, JUDGE